ORDERED.

Dated: June 28, 2016

K. Rodney May
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

In re:

AMERICAN MANAGED CARE, LLC,

    Debtor.

Chapter 11
Case No. 8:13-bk-05952-KRM

_____/

SONEET R. KAPILA, as the Chapter 11
Trustee for the estate of Universal Health Care
Group, Inc., which entity serves as the sole
member of AMERICAN MANAGED CARE, LLC,

    Plaintiff,

v.

Adv. No. 8:15-ap-00099-KRM

GREGORY E. MATTON, P.A.,
GREGORY E. MATTON, individually,
d/b/a GREGORY E. MATTON, P.A.,

    Defendants.

_____/

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(Doc. No. 23)

THIS ADVERSARY PROCEEDING came before the Court for hearing on June 14, 2016 to consider the Liquidating Agent's Motion for Summary Judgment on Count II of the Complaint (the "Motion for Summary Judgment") against Gregory E. Matton, P.A. ("Matton

P.A.") Gregory E. Matton, Individually, d/b/a Gregory E. Matton, P.A. ("Matton") (collectively "Defendants") (Doc. No. 23).

## BACKGROUND AND PROCEDURAL STATUS

On February 6, 2013, Universal Health Care Group, Inc. ("Universal") filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code (Case No. 8:13-bk-01520-KRM) (the "Universal Case").  On April 22, 2013, Soneet R. Kapila was appointed as Chapter 11 trustee for Universal by order of the Bankruptcy Court (Universal Case, Doc. No. 238).  In his capacity as trustee, Mr. Kapila exercised his authority over Universal as the sole member of American Managed Care, LLC ("AMC") to file a Chapter 11 petition on behalf of AMC on May 3, 2013 (the "Petition Date") (Case No. 8:13-bk-05952-KRM) (the "AMC Case"). The estates of Universal and AMC are jointly administered but not substantively consolidated.

On August 18, 2015, the Court entered orders confirming the respective plans of liquidation for both Universal and AMC. (Universal Case, Doc. Nos. 1646 & 1648).  Pursuant to the confirmed plans, Soneet Kapila was appointed as Liquidating Agent (the "Liquidating Agent") for the estates of AMC and Universal and automatically succeeded to and was substituted in place of the Trustee in all litigation.

On January 30, 2015, Liquating Agent filed a Complaint to Avoid and Recover Fraudulent Transfers ("Complaint") against Defendants pursuant to 11 U.S.C. § 548 and 550.  In the Complaint, Liquidating Agent seeks to recover transfers totaling $89,656.50 received from AMC prepetition.

On January 30, 2015, the Liquidating Agent also filed a Complaint to Avoid and Recover Preferential Transfers against Defendants seeking a return of transfers totaling $70,887.50 made by Universal prepetition. (*See* Adv. Proc. 15-00098; Doc. No. 1).

On March 12, 2015, Defendants filed their Motion to Dismiss Adversary Complaint and Incorporated Memorandum of Law (Doc. No. 10). On May 11, 2015, the Court entered an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (Doc. No. 15), dismissing Count I of the Complaint as to actual fraud under § 548(a)(1)(a) but allowing Count II as to constructive fraud under § 548(a)(1)(b) to continue.

On April 1, 2016, the Liquidating Agent filed his Motion for Summary Judgment. In support of the Motion for Summary Judgment, the Liquating Agent attached several exhibits and filed an Affidavit of Soneet Kapila in Support of Liquidating Agent's Motion for Summary Judgment as to Count II of the Complaint (the "Kapila Affidavit"). (Doc. No. 24).

On May 25, 2016, Defendants filed their Response to Motion for Summary Judgment ("Response"). (Doc. No. 33). Attached to the Response, Defendants submitted the Affidavit of Shaun Keck (the "Keck Affidavit") and the Affidavit of Gregory E. Matton (the "Matton Affidavit"). The Liquidating Agent filed his Reply to Defendants' Response to Motion for Summary Judgment ("Reply") on June 6, 2016. (Doc. No. 34).

## UNDISPUTED FACTS

Universal was a holding company that provided health insurance and managed care products through certain subsidiaries: (i) Universal Health Care, Inc.; (ii) Universal Health Care Insurance Company, Inc.; (iii) Universal HMO of Texas, Inc.; and (iv) Universal Health Care of Nevada, Inc. (collectively the "Regulated Subsidiaries"). AMC was also a wholly owned

subsidiary of Universal, and a third-party administrator that operated as the management company for the operations of the Regulated Subsidiaries.

Prepetition, Defendant, Matton P.A. was hired to represent Universal, the Desai Limited Partnership, and Akshay Desai with respect to Universal's corporate matters (the "Engagement Letters"). (*See* Motion for Summary Judgment, Exhibit A). Defendant Matton was a practicing attorney in Tampa, Hillsborough County, Florida, who worked at and owned Matton P.A. AMC was not a party to and did not execute an engagement letter with Matton P.A.

The Engagement Letters indicate Matton P.A. would bill for services monthly and that Universal would provide a $15,000.00 retainer. Instead, AMC paid the $15,000.00 retainer on May 11, 2012. Matton P.A. invoiced Universal for services rendered from April 2012 to February 2013 (the "Invoices"). (*See* Motion for Summary Judgment, Composite Exhibit B**).**

The Invoices include time entries indicating that Matton P.A. performed services on behalf of Universal: (1) in the case of *Zachariah P. Zachariah v. Akshai Desai; Desai Limited Partnership; PPC, LC; and Universal Health Care Group, Inc.*, Case No. 2012-12695-CA-01 in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "Zachariah Case") and (2) with respect to the sale of a Universal affiliate to Barclays Capital.

Prepetition, AMC transferred $89,656.50 to Defendants by way of four checks detailed below (the "Transfers"):

| Date | Check Number | Amount |
| --- | --- | --- |
| May 11, 2012 | 11439 | $15,000.00 |
| July 12, 2012 | 11974 | $33,354.00 |
| Jan. 3, 2013 | 13673 | $18,825.00 |

| Jan. 11, 2013 | 13725 | $22,477.50 |
|---|---|---|
| TOTAL | | $89,656.50 |

Each of the Transfers was made out of AMC's bank account at Wells Fargo. (*See* Motion for Summary Judgment, Exhibits C & D). Some of Matton P.A.'s Invoices were paid by Universal, including an additional retainer of $50,000. *See* Complaint and Exhibits filed in Adversary Proceeding *Kapila v. Gregory E. Matton, P.A. et al.*, 8:15-ap-00098-KRM.

Matton P.A. was administratively dissolved on September 28, 2012. (*See* Motion for Summary Judgment, Exhibit E). Each of the Transfers was received by Matton and deposited into his personal bank account. (*See* Motion for Summary Judgment, Exhibit F).

At the time the Transfers were made, AMC was insolvent. AMC's tax returns demonstrated it was insolvent as early as December 2011. AMC remained insolvent through the Petition Date. As of the Petition Date, AMC's Schedules listed assets totaling approximately $2.6 million and liability totaling over $56 million. (*See* Kapila Affidavit at ¶¶17-21).

## CONCLUSIONS OF LAW

*Summary Judgment Standard.*

Pursuant to Federal Rule of Bankruptcy Procedure 7056(c), summary judgment shall be rendered when the moving party demonstrates that no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056(c). *See also Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The purpose of summary judgment is to determine if there are genuine issues for trial. *Banco Latino International v. Gomez Lopez*, 95 F.Supp.2d

1327, 1332 (S.D. Fla. 2000); *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir. 1994).

To defeat a motion for summary judgment, the opposing party must do more than simply show that there is some doubt as to the facts of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The party opposing the motion must establish (a) the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed facts to defeat the motion, and (b) that the movant is not entitled to judgment as a matter of law. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Summary judgment is appropriate on a fraudulent transfer action pursuant to 11 U.S.C. § 548(a)(1)(b) if a plaintiff establishes (1) a transfer of interest of a debtor in property, (2) made within two (2) years before the petition date, (3) in which the debtor received less than a reasonably equivalent value in exchange for such transfer or obligation, and (4) the debtor was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. *Kapila v. Suntrust Mortg. (In re Pearlman),* 515 B.R. 887, 894 (Bankr. M.D. Fla. 2014); 11 U.S.C. §548(a)(1)(B).

***The Transfers were of AMC's interest in property.***

A "transfer" is defined as the creation of a lien, retention of title as a security interest, foreclosure of a debtor's equity of redemption; or each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property of an interest in property. 11 U.S.C. § 101(54). By virtue of the Transfers described above, AMC transferred a total of $89,656.50 to Defendants. It is undisputed that the checks making up the Transfers were each made out of a bank account owned by AMC.

Defendants argue that the Transfers were not of AMC's property because AMC did not have control of its own bank account and because the AMC bank account acted as a "common fund." In support of this argument, Defendants cite to the case of *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177 (11th Cir. 1987) for the proposition that the Court must evaluate the transaction in its entirety to determine if the debtor had control over the funds at issue. Defendants further argue that control requires the power to designate the party which will receive payment and the actual power to disburse the funds. *See Kapila v. Espirito Santo Bank (In re Bankest Capital Corp.),* 374 B.R. 333, 338 (Bankr. S.D. Fla. 2007). Defendants then point to the Keck Affidavit testimony that all accounts owned by Universal, its Regulated Subsidiaries and AMC were treated as a common fund, and that the funds were collectively used to pay debts of any of all of these entities. (Keck Affidavit, ¶¶6, 8).

The Keck Affidavit fails to create a genuine issue of material fact precluding summary judgment on this issue.[1] Even though Keck characterizes the facts as a common fund, the facts that he recites do not support the conclusion that AMC was not in control of its own account. The Keck Affidavit states that (1) AMC was frequently used as a fallback entity to pay Universal-related expenses (Keck Affidavit, ¶6), if funds were available in Universal, it would pay its expenses (Keck Affidavit, ¶12).[2]

---

[1] The Court also notes that the Keck affidavit appears to lack foundation for the testimony it presents. Keck states that he was employed as "Chief of Staff" Universal for four years, but he fails to state which four years. (Keck Affidavit, ¶1). Further, the title "Chief of Staff" is not a common title in private companies and does not give the Court any understanding of his role with the company. Further, Keck's affidavit talks about a management agreement with no foundation of how he is familiar with such an agreement and describes his knowledge as being based on conversations with the CEO. (Keck Affidavit, ¶¶ 3, 10).

[2] It is undisputed that Universal did in fact pay some of the Matton P.A. Invoices, including $70,887.50 Universal paid in the 90-day period prior to filing for bankruptcy.

Defendants have not produced any evidence of the existence of any control, escrow, or earmarking agreement that gave control over the funds in AMC's bank account to Universal or anyone else. *See Arnold, Matheny & Eagan, P.A. v. First Am. Holdings, Inc.,* 982 So.2d 628 (Fla. 2008) (a customer owning a bank account has possession and control over the funds in that account once they are deposited). *See also Bankest Capital Corp.,* 374 B.R. at 338 (rejecting argument that the debtor did not have control when there was no evidence of an escrow agreement or express earmarking agreement).

Accordingly, the Court determines that there is no genuine issue of material fact, and the Liquidating Agent has established as a matter of law that the Transfers were of AMC's property.

***The Transfers were made within two years before the Petition Date.***

Less than two years after the Transfers were made (*see* Exhibit C), on May 3, 2013, the Liquidating Agent filed the voluntary Chapter 11 petition for AMC. Defendants have presented no law or evidence to dispute this fact.

***AMC received less than reasonably equivalent value in exchange for the Transfers.***

There is no dispute that Defendants were engaged to represent Universal and did not provide legal services to AMC. The Engagement Letter and the Invoices show that Defendants performed legal work for Universal, as defendant in the Zachariah Case (to which AMC was not a party), and in assisting with a proposed sale of one or more of the Regulated Subsidiaries. Accordingly, the Court concludes that AMC was not the recipient of the value Defendants provided that resulted in payment.

Defendants rely on the "identity of interests" doctrine and the "indirect benefit rule" to claim that AMC and Universal were so closely related that a benefit to one constituted a benefit

8

or collateral benefit to the other. However, the Court concludes that the undisputed facts and the prevailing case law do not support this proposition. The "identity of interest" doctrine has not been adopted by the Eleventh Circuit.

The Eleventh Circuit's most recent decision on this issue, *PSN Liquidating Trust v. Intelstat Corp. (In re PSN USA, Inc.)*, 615 Fed. Appx. 925 (11th Cir. 2015), ruled that a subsidiary benefits from the payment made on its parent's debts when the subsidiary is the one utilizing the services for which the debt was created. In *PSN*, the subsidiary that paid the debts specifically benefitted from and used the services afforded by the vendor—in the *PSN* case, the use of satellites—in the operation of the subsidiary's business. *Id*. at 931-32.

The cases relied upon by Defendants do not support their argument. *See In re Ear, Nose and Throat Surgeons of Worcester, Inc.,* 49 B.R. 316, 320 (Bankr. D. Mass. 1985) (court determined that the debtor did not receive reasonably equivalent value in exchange for lien provided to secure loan to its owner when loan was not used to benefit debtor); *In re Pembroke Development Corp.,* 124 B.R. 398 (Bankr. S.D. Fla. 1991) (court held that debtor did receive reasonably equivalent value for payments made which secured not only a creditor's forbearance on a loan with a related non-debtor entity, but also with respect to a loan made to the debtor).

***The Transfers were made while AMC was insolvent.***

Defendants present no evidence to dispute that AMC was insolvent at the time of the Transfers. According to the Kapila Affidavit, AMC was insolvent from the end of 2011 through the Petition Date when its schedules show only $2.6 million in assets and over $56 million in claims.

*Gregory Matton is an initial transferee under 11 U.S.C. § 550(a).*

Gregory Matton is individually liable for the Fraudulent Transfers because he is the initial transferee under 11 U.S.C. §550(a)(1). Defendants have stipulated that Gregory Matton received each of the Transfers and that they were deposited directly into his personal bank account. The Liquidating Agent is entitled to recover the value of the Transfers directly from him personally. *See Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312 (11th Cir. 2010) (the initial recipient who is in control of the transferred funds is the initial transferee).

## CONCLUSION

For the foregoing reasons and for the reasons stated on the record in open court on June 14, 2016, the Liquidating Agent is entitled to judgment as a matter of law against Defendants jointly and severally for the Transfers.

**ORDERED:**

1. The Liquidating Agent's Motion for Summary Judgment is GRANTED.
2. The Court will enter a separate final judgment for the Liquidating Agent.

\*\*\*\*

Attorney Lori V. Vaughan is directed to serve a copy of this opinion and order on non-cm/ecf interested parties and file a proof of service within three days of entry of this order.